## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

FRANKLIN FITZPATRICK                                            PETITIONER

v.                                                    No. 3:16CV200-MPM-RP

JACAUELYN BANKS, ET AL.                                        RESPONDENTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Franklin Fitzpatrick for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and Mr. Fitzpatrick has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.* Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

## Procedural Posture

Franklin Fitzpatrick is currently in the custody of the Mississippi Department of Corrections (MDOC) and housed at the South Mississippi Correctional Institution in Leakesville, Mississippi. He was convicted of capital murder in the Tippah County Circuit Court Cause No. TK2011-006. On May 10, 2013, the circuit court sentenced him as a habitual offender[1] to serve a term of life imprisonment without the possibility of parole in the custody of the MDOC. *See* SCR, Vol. 2, p. 214-16.

He appealed his capital-murder conviction and resulting sentence to the Mississippi Supreme Court, raising the following issues:

Issue One:      The State's elements instruction contained an improper
                statement of the law. Therefore, Fitzpatrick's conviction must
                be reversed.

Issue Two:      The trial court erred when it overruled Fitzpatrick's motion for
                a new trial. The overwhelming weight of the evidence does
                not support a conviction for capital murder of a peace officer.

---

[1] *See* Mississippi Code Annotated section 99-19-81.

The supreme court interpreted the State's argument to raise a third issue:

Issue Three: Fitzpatrick is procedurally barred from challenging the elements instruction on appeal because he did not object to it at trial.

The Mississippi Supreme Court affirmed the judgment of the circuit court. *Fitzpatrick v. State*, 175 So. 3d 515 (Miss. 2015), *reh'g denied,* October 15, 2015.

On May 6, 2016, Fitzpatrick filed an application for leave to proceed in the trial court in Mississippi Supreme Court Cause No. 2016-M-00662.[2] *See* SCR, Mississippi Supreme Court Cause No. 2016-M-00662. In his application, Fitzpatrick raised the following claims, *pro se,* which the court has restated in the interest of brevity and clarity*:*

Issue One: Fitzpatrick's conviction and sentence were imposed in violation of the constitution because his defective indictment failed to properly notify him of the crime charged.

Issue Two: The trial court violated his due process rights by failing to *sua sponte* order a competency hearing;

Issue Three: Fitzpatrick suffered ineffective assistance of counsel by his trial counsel's alleged failure to: (a) challenge the allegedly defective indictment; (b) request a competency hearing; (c) conduct a proper investigation; (d) present adequate evidence and witnesses; (e) challenge the admission of statements at trial; and (f) challenge the alleged hearsay testimony of Agent Moore.

Issue Four: Fitzpatrick's right to a speedy trial was violated.

On July 20, 2016, the Mississippi Supreme Court entered an order denying the application as being

---

[2] Before filing this petition, Mr. Fitzpatrick, on March 7, 2016, filed an application for leave to proceed in the trial court in Mississippi Supreme Court Cause No. 2016-M-00348. SCR, Mississippi Supreme Court Cause No. 2016-M-00348. The Mississippi Supreme Court, however, dismissed this application due to his failure to include substantive argument or support for his contention that he was entitled to post-conviction relief. *Id*.

without merit. *Id.*

Mr. Fitzpatrick filed the instant federal petition for a writ of *habeas corpus* on August 31,

2016. ECF doc. 1. In his federal petition, he raises the following issues *pro se*, which the court has

summarized for the sake of brevity and clarity:

| | |
|---|---|
| Ground One: | Fitzpatrick's conviction and sentence were imposed in violation of the constitution because his allegedly defective indictment is devoid of any allegation that Fitzpatrick murdered a law enforcement officer. |
| Ground Two: | The State's elements instruction contained an improper statement of the law. |
| Ground Three: | The trial court violated his due process rights by failing to *sua sponte* order a competency hearing. |
| Ground Four: | Mr. Fitzpatrick received ineffective assistance of counsel by his trial counsel's alleged failure to: (a) challenge the allegedly defective indictment; (b) raise a speedy trial violation; and (c) hold a competency hearing. |
| Ground Five: | Mr. Fitzpatrick was denied his constitutional right to a speedy trial. |

## Facts

On December 2, 2010, Franklin Fitzpatrick and Joani Clifton consumed a designer drug

commonly referred to as "bath salts."[3] SCR, Vol. 5, p. 320-23; Vol. 6, p. 482, 600. Near midnight,

Franklin and Clifton went to the home of Matt Thrasher, a friend of Clifton, in Tippah County. SCR,

Vol. 4, p. 242-44; Vol. 6, p. 537-38. There, Fitzpatrick consumed more bath salts, along with

marijuana and crystal methamphetamine. SCR, Vol. 6, p. 537-38. In the early morning hours of

---

[3] The actual name of the drug Fitzpatrick consumed is 3,4-methylenedioxypyrovalerone, or MDPV, for short. SCR, Vol. 6, p. 567.

- 4 -

December 3, it became apparent that Fitzpatrick had consumed too much, and he began acting erratically. SCR, Vol. 4, 252-55. He began sweating, hallucinating, and speaking irrationally. *Id.*; SCR, Vol. 6, p. 537-38. Thrasher brought Fitzpatrick a wet rag to cool him off, but Fitzgerald became aggressive. SCR, Vol. 4, p. 254. Thrasher testified Fitzpatrick was "slinging [him] around like a rag doll," but he somehow broke loose and ordered Fitzpatrick and Clifton to leave. *Id.* at p. 254-55.

Shortly after driving off with Fitzpatrick, Clifton returned to Thrasher's house, as she was afraid that she could not handle Fitzpatrick by herself. *Id.* at 256-57; SCR, Vol. 5, p. 325. Thrasher called 911 to report the disturbance and ask for assistance. SCR, Vol. 4, p. 259; Vol. 5, p. 301. Tippah County Sheriff's Deputy Rodney Callahan arrived on the scene around 4:30 a.m. on December 3, 2010. SCR, Vol. 4, p. 259; Vol. 5, p. 325-26, 349.

When Deputy Callahan got to Thrasher's house, he observed Fitzpatrick pacing in the driveway wearing just a t-shirt and sweating profusely, despite it being a cool December night. SCR, Vol. 5, p. 350-52. Deputy Callahan recalled that Fitzpatrick was "really wet" when he arrived and that the whites of Fitzpatrick's eyes were "really large." *Id.* Deputy Callahan testified that Fitzpatrick kept pacing back and forth, licking his lips. *Id.* Fitzpatrick repeatedly requested that Deputy Callahan pray with him, and he kept saying that he thought the devil was "going to come up and get him." *Id.* Unable to discern whether Fitzpatrick was on drugs or suffering from some medical condition, Deputy Callahan called an ambulance. *Id.* Fitzgerald then approached Deputy Callahan, touching his sleeve of his uniform as he asked Deputy Callahan to pray with him. *Id.* at 352. Deputy Callahan advised Fitzpatrick not to approach him like that again or he would tase him. *Id.* Fitzpatrick backed off, and Deputy Callahan spent the next several minutes trying to get Fitzpatrick to calm down. *Id.* at 352-56; SCR, Vol. 4, p. 264-65. Fitzpatrick, however, began expressing his fear that Deputy Callahan might

shoot him, although Deputy Callahan repeatedly told Fitzpatrick that he only wanted to talk to him. *Id.* at 265, 296-97.

Within minutes of Deputy Callahan's arrival, Deputy Dewayne Crenshaw also arrived. *Id.* at p. 264; SCR, Vol. 5, p. 310, 357. The deputies continued to try to calm Fitzpatrick down but concluded it was best for his and their own safety if they restrained Fitzpatrick. SCR, Vol. 5, p. 360-61. As the deputies approached to handcuff him, Fitzpatrick resisted, and a scuffle ensued. *Id.* at 362-63. During the encounter, Fitzpatrick gained control of Deputy Callahan's service weapon. *Id.* at 362-65. When he first heard the shots, Deputy Callahan thought Deputy Crenshaw had shot Fitzpatrick, but when he reached for his weapon and it was not there, he realized what had happened. *Id.* at 365. Fitzpatrick had yanked Deputy Callahan's weapon from his holster during the struggle and had used it to fatally shoot Deputy Crenshaw. *Id.* at 374-75, 382, 391, 433; SCR, Vol. 6, p. 575.

Deputy Callahan immediately ran for cover. SCR, Vol. 5, p. 365. From there, he noticed Fitzpatrick no longer had the pistol in his possession, so he decided to try to subdue him. *Id.* at 381-82. An intense struggle ensued, but Deputy Callahan could not gain the upper hand. *Id.* at 382. At that point, the ambulance had arrived. *Id.*

Deputy Callahan, despite being in a fierce struggle with Fitzpatrick, told the paramedics to first check on Deputy Crenshaw, but it was too late. *Id.* at 382-83. Deputy Crenshaw was dead. *Id.* After tending to Deputy Crenshaw, Al Crum, an EMT, joined the struggle to subdue Fitzpatrick. *Id.* In the end, however, it took several people to bring Fitzpatrick under control. *Id.* at 433-34; SCR, Vol. 6, 555-56, 576-77.

Once in custody, Fitzpatrick was taken to a Tippah County hospital. SCR, Vol. 6, p. 524. A search warrant was obtained for his blood, which tested positive for marijuana and MDPV, the

chemical component in bath salts. *Id*. at 525, 567. A subsequent urine analysis also showed

Fitzpatrick had methamphetamine in his system at the time. SCR, Vol. 7, p. 612-13.

Later, Fitzpatrick, after waiving his *Miranda*[4] rights, gave a statement to agents with the

Mississippi Bureau of Investigation. SCR, Vol. 6, p. 477-80. In his statement, Fitzpatrick described

his drug use that night, his subsequent paranoid thoughts, and his altercation with Thrasher. *Id*. at 482-

83. He recounted the police pulling up at Thrasher's residence. *Id*. From there, Fitzpatrick's version

of events diverged from what actually happened. He claimed that he remembered being handcuffed

and placed in the back of a vehicle where he passed out. *Id*.

On January 18, 2011, a Tippah County grand jury indicted Fitzpatrick for the crime of capital

murder. SCR, Vol. 1, p. 37. After a change of venue, Fitzpatrick was tried in Lafayette County with

jurors from Attala County. SCR, Vol. 1, p. 52; Vol. 3, p. 34-36. On May 9, 2013, the jury returned a

verdict of guilty of capital murder. SCR, Vol. 2, p. 213-16. Fitzpatrick waived his right to a

sentencing hearing, and the circuit court sentenced him to life without the possibility of parole for the

crime of capital murder as a habitual offender under Mississippi Code Annotated section 99-19-81.

*Id.*

**Grounds Two and Four(b): Precluded by Procedural Default and Procedural Bar**

If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no

more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised

in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly,

federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to

---

[4] *Miranda v. Arizona,* 384 U.S. 436 (1966).

consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). Thus, a federal court may not consider a *habeas corpus* claim when, "(1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, ⸻ U.S. ⸻, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*.

A state procedural rule is "independent" when the state law ground for decision is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* State court decision must not be interwoven with federal law, Federal Habeas Manual § 9B:24.

To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.

**Cause and Prejudice – and Fundamental Miscarriage of Justice –
As Ways to Overcome Procedural Bar**

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

**Ground Two:  Procedurally Barred**

Mr. Fitzpatrick's allegations in Ground Two of the petition (alleging that the State's jury instruction regarding the elements of the offense contained an improper statement of the law) was found to be procedurally barred by the Mississippi Supreme Court on direct appeal due to

Fitzpatrick's failure to raise the claim at trial.[5]  Under Fifth Circuit precedent, a failure to present an

issue to the trial court, as in the present case, is an independent and adequate state procedural bar.

*Smith v. Black*, 970 F.2d 1383, 1386-87 (5th Cir. 1992); *see also Day v. King*, No: 1:03CV624-DMR-

JMR, 2006 WL. 2541600, at *4 (S.D. Miss. August 31, 2006) (listing Mississippi cases regarding

failure to lodge a contemporaneous objection or present the issue to the trial court for review).  Thus,

Mr. Fitzpatrick is procedurally barred from raising this claim in the instant petition.

He has not shown cause for his failure to present the issue in Ground Two to the trial court, as

he has not shown that something external to him – beyond his control – which prevented him from

doing so.  *Coleman v. Thompson*, 501 U.S. 722 (1991); *Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir.

1995)).  Generally speaking, attorney error does not constitute cause for procedural default, as there is

"no inequity in requiring [the petitioner] to bear the risk of attorney error that results in procedural

default."  *Murray v. Carrier,* 477 U.S. 478, 488 (1986).  In the absence of a showing of cause, the

court need not examine whether the petitioner experienced actual prejudice from application of the

default.  Finally, Mr. Fitzpatrick has not shown that a fundamental miscarriage of justice would result

should the court apply the default, as he has not shown that, "more likely than not that no reasonable

juror would have convicted him in the light of the new evidence."  *Fairman v. Anderson,* 188 F.3d

635, 644 (5th Cir. 1999).

**Ground Four(b):  Procedurally Defaulted**

---

[5] Defense counsel objected to the elements jury instruction at trial, but not on the grounds
raised on direct appeal before the state appellate court.  *See* SCR, Vol. 3, p. 16-32 (discussion of
whether counsel could question potential jurors regarding the elements jury instruction during voir
dire); Vol. 7, p. 617-636 (jury instruction conference); and Vol. 7, p. 730-736 (jury instruction
conference).  Under Mississippi law, an "[o]bjection on one ground at trial waives all other grounds
for objection on appeal."  *Rubenstein v. State*, 941 So. 2d 735, 758 & 773 (Miss. 2006).

The specific claim of ineffective assistance of counsel raised in Ground Four (b) of Fitzpatrick's federal petition for a writ of *habeas corpus* (alleging of ineffective assistance of counsel due to trial counsels' failure to raise a speedy trial issue) was raised neither before the state supreme court on direct appeal nor on post-conviction review. On post-conviction review, Fitzpatrick raised various claims of ineffective assistance of counsel; however, he failed to present the specific claim raised in Ground Four (b) of the instant petition. The Fifth Circuit has held that each individual claim of ineffective assistance of counsel must be exhausted separately. *Wilder v. Cockrell*, 274 F.3d 255, 261 (5th Cir. 2001). Because Fitzpatrick has failed to present this specific claim to the state's highest court, thus giving the state a fair opportunity to pass on it, the claim is procedurally barred from federal review under *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995), and will be dismissed with prejudice. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

When "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forgo the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review." *Sones*, 61 F.3d at 416. By failing to raise the specific claim of ineffective assistance of counsel as contained in Ground Four (b) on either direct appeal or on post-conviction review, Mr. Fitzpatrick has not proceeded in a procedurally proper manner. "If a petitioner fails to exhaust state remedies, but the court to which he would be required to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal *habeas corpus* relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). For these reasons, Mr. Fitzpatrick waived having the state's highest court review the claim on the merits. He has thus defaulted the ineffective assistance of counsel claim raised in Ground Four (b) of the instant petition, and the court may not review that claim.

Fitzpatrick cannot show "cause" under the "cause and prejudice" test to allow this Court to reach the merits of the claim despite the procedural bar because no external impediment existed to prevent him from raising and discussing this claim properly as a ground for relief in state court. *United States v. Flores,* 981 F.2d 231 (5th Cir. 1993). He filed an application to proceed with post-conviction review and raised several claims of ineffective assistance of counsel in it. However, Fitzpatrick chose not to include this current claim challenging trial counsel's alleged failure to raise a speedy-trial violation. As Mr. Fitzpatrick has not shown "cause," the court need not consider whether he suffered actual prejudice. *Martin,* 98 F.3d at 849.

Applying the default will not result in a "fundamental miscarriage of justice," as that exception is limited to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman*, 188 F.3d at 644. To show that he was actually innocent, he must support his allegations with new, reliable evidence not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* Mr. Fitzpatrick provides no such evidence. As such, he has not shown that a fundamental miscarriage of justice would result if this claim were not considered on the merits.

### Grounds One, Three, Four(a) and (c), and Five: Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds One, Three, Four(a) and (c), and Five on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

court proceedings *unless* the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision

contradicted federal law.  Accordingly, the exception in subsection (d)(1) does not apply to Grounds One, Three, Four(a) and (c), and Five of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented.  Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1).  As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One:  Defective Indictment

In Ground One, Franklin Fitzpatrick argues that his indictment failed to properly notify him of the crime charged.  He claims that the indictment contains no allegation that Fitzpatrick murdered a law enforcement officer.  The court lacks jurisdiction over this claim, and the claim is directly contradicted in the record.

This court lacks jurisdiction over this issue because Mr. Fitzpatrick has not alleged the deprivation of a constitutional right.  The sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994).  "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams*, 16 F.3d at 637.

Rule 7.06 of the Uniform Circuit and County Court Rules specifically addressed the required

elements of an indictment.[6]  The indictment[7] in this case meets all the requirements set forth in Rule

7.06.  *See* SCR, Vol. 1, p. 37.  It included all of the required elements and put Fitzpatrick on fair notice

of the charge against him.  *Id.*  The state court had jurisdiction based on the indictment; therefore, this

Court lacks jurisdiction to examine the claim in Ground One.  *See Riley*, 339 F.3d at 313-14.  On post-

conviction review, the Mississippi Supreme Court found that Mr. Fitzpatrick's challenge to the

indictment was without merit.  As such, this court need not address the issue, and Mr. Fitzpatrick's

claim in Ground One challenging the indictment will be denied.

In any event, this ground for relief is frivolous.  The indictment clearly contains "an allegation

that Fitzpatrick murdered a law enforcement officer," as it charges that:

> *FRANKLIN FITZPATRICK* late of the County and State aforesaid, on or about the 3rd
> day of December, 2010 in the County and State aforesaid, and within the jurisdiction
> of this court, *did unlawfully, willfully and feloniously, without authority of law and
> with the deliberate design to effect death, kill and murder Dewayne Crenshaw, a
> Deputy Sheriff, while Dewayne Crenshaw was acting in his official capacity as a
> Deputy Sheriff for Tippah County, Mississippi*, in violation of the provisions of Section
> 97-3-19(2)(a) of the Mississippi Code of 1972, Annotated, as amended, which offense
> is punishable by death or imprisonment for life, contrary to the form of the statute in
> such cases made and provided and against the peach and dignity of the State of
> Mississippi.

Doc. 21-1 at 43 (emphasis added).

### Ground Three:  The Trial Court's Decision Not to Order a Competency Hearing

In Ground Three, Mr. Fitzpatrick argues that the trial court violated his due process rights by

failing to *sua sponte* order a competency hearing.  This claim is without merit.

---

[6] *See also* Rule 14.1 of the Mississippi Rules of Criminal Procedure (eff. July 1, 2017).

[7] The indictment was later amended to charge Fitzpatrick as a habitual offender under
Mississippi Code Annotated § 99-19-81.  *See* SCR, Vol. 1, p. 49 and 134.

A trial court must hold a competency hearing only when there is evidence that objectively creates a bona fide question as to whether the defendant is competent to stand trial. *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980); *see also Forrest v. Attorney General of Mississippi*, No. 3:11CV125-MPM-DAS, 2014 WL 3827800, at *9 (N.D. Miss. July 29, 2014). To obtain relief, the petitioner need not establish that he was incompetent to stand trial; he need only establish that the trial judge should have ordered a hearing to determine his competency. *See Lokos*, 625 F.2d at 1261. "The question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about [the] defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Id*.

During post-conviction review, the Mississippi Supreme Court found that Mr. Fitzpatrick's argument that the trial court erred by failing to *sua sponte* order a competency hearing was without merit. No evidence in the record suggests that he was incompetent to stand trial. Hence, under the standard set forth above, the trial court was not required to hold a competency hearing. The state appellate court's resolution of the issue in Ground Three was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. This ground for relief is without merit.

### Grounds Four(a) and (c): Ineffective Assistance of Counsel

Mr. Fitzpatrick alleges in Ground Four that trial counsel provided ineffective assistance. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that

defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

In the instant petition, Mr. Fitzpatrick argues that he received ineffective assistance of counsel because trial counsel failed to: (a) challenge his indictment; (b) raise a speedy-trial claim; and (c) hold a competency hearing. As set forth above, Ground Four (b) is precluded from *habeas corpus* review because Mr. Fitzpatrick did not present the issue to the state's highest court. As to Grounds Four (a) and (c), because Fitzpatrick's claims of a defective indictment[8] and the necessity of a competency

---

[8] *See* Ground One (establishing sufficiency of the indictment).

hearing[9] are without merit, his claims based on his counsel's alleged failure to challenge the indictment or request such a hearing are also without merit. Counsel cannot be ineffective for failure to raise meritless claims. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.")

As these arguments are without merit, Mr. Fitzpatrick suffered no prejudice from counsel's decision not to raise them. The Mississippi Supreme Court's decision on post-conviction review that Fitzpatrick's claim of ineffective assistance of counsel lacked merit was correct. The court's finding was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, the decision was not based on an unreasonable determination of the facts in light of the evidence. Mr. Fitzpatrick is not entitled to *habeas corpus* relief as to Ground Four of his petition.

Mr. Fitzpatrick has not shown that his counsel's actions were deficient. Further, Mr. Fitzpatrick cannot establish the prejudice prong of *Strickland*, as he fails to establish that, but for his counsel's alleged errors, the results of the proceedings would have been different, especially in light of the amount of evidence of his guilt. The Mississippi Supreme Court did not err in denying relief on these claims of ineffective assistance of counsel. Mr. Fitzpatrick's claims Ground Four of the instant petition will be denied.

**Ground Five: Violation of the Right to a Speedy Trial**

Mr. Fitzpatrick argues in Ground Five that he was denied his constitutional right to a speedy trial. The Mississippi Supreme Court, during post-conviction review, found no violation of

---

[9] *See* Ground Three (no record evidence exists to suggest Fitzpatrick was incompetent to stand trial).

Fitzpatrick's speedy trial rights. Courts evaluate speedy trial claims under a four-part balancing test: (1) the length of delay, (2) the reason for the delay, (3) the assertion of the right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Section 2254(d) requires federal courts to "give the widest of latitude to a state court's conduct of its speedy-trial analysis." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011). "If there is any objectively reasonable basis on which the state court could have denied relief, the AEDPA demands that we respect its decision to do so." *Id.*

In the instant case, Franklin Fitzpatrick murdered Deputy Crenshaw, a law enforcement officer acting in his official capacity, on December 3, 2010.[10] SCR, Vol. 5, p. 318, 348-49, 391-92. He was indicted on the charge of capital murder on January 18, 2011. SCR, Vol. 1, p. 37. Following a change of venue, Fitzpatrick's trial ultimately occurred on May 6, 2013. *Id.* at 52; Vol. 2, p. 214-16.

### 1. Length of the delay

The first factor serves as a "triggering mechanism." *Barker*, 407 U.S. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530-31. "The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993). In the Fifth Circuit, a one-year delay is "presumptively prejudicial." *Id.* In Mississippi, the supreme court has generally held that a delay of eight months or longer is "presumptively prejudicial."

---

[10] Mr. Fitzpatrick stated on post-conviction review that he was arrested on December 2, 2010; however, the record shows that the crime actually did not occur until the early morning hours of December 3, 2010. *See* SCR, Vol. 1, p. 37 and Vol. 5, p. 391-92. The court will thus use December 3, 2010, as the date of arrest to conduct the speedy-trial analysis.

*See State v. Woodall*, 801 So. 2d 678, 682 (Miss. 2001). Here, there was a delay of 885 days (nearly

2½ years) between arrest and trial. As such, it is necessary to balance the remaining *Barker* factors.

### 2. Reason for the delay

Different reasons for a delay conducting a trial are entitled to different weights:

> At one extreme, a *deliberate delay* to disadvantage the defense is weighted heavily
> against the state. At the other end of the spectrum, delays explained by valid reasons
> or attributable to the conduct of the defendant weigh in favor of the state. Between
> these extremes fall *unexplained* or negligent delays, which weigh against the state,
> "but not heavily."

*Id*. (emphasis added). The record in this case contains no evidence that the State *deliberately* delayed

the proceedings in this case in order to obtain some undue advantage. No reason for the delay appears

in the record.[11] The unexplained delay weighs in Fitzpatrick's favor, but to a small degree. *See Amos*,

646 F.3d at 207.

### 3. Assertion of the Right

The third *Barker* factor is whether the defendant diligently asserted his speedy trial right

because the burden falls "on the defendant to alert the government of his grievances." *See id.* "A

defendant's assertion of his speedy trial right receives strong evidentiary weight, *while a failure to*

*assert the right will make it difficult for a defendant to prove that he was denied a speedy trial*." *Id.*

(emphasis added). Mr. Fitzpatrick did not assert his right to a speedy trial. As such, this factor weighs

against him.

### 4. Prejudice

Finally, the court must examine the degree of prejudice Mr. Fitzpatrick suffered due to the

---

[11] Although Mr. Fitzpatrick requested a change of venue, the extent this contributed to the
delay is not clear in the record. *See* SCR, Vol. 1, p. 52.

delay.  Since the first three (3) factors do not weigh heavily against the State, he must make an affirmative showing of actual prejudice.[12]  *See Amos*, 626 F.3d at 208.  In determining "actual prejudice," the court must consider the defendant's interests the right to a speedy trial was designed to protect:  (i) preventing oppressive pretrial incarceration; (ii) minimizing anxiety and concern of the accused; and (iii) limiting the possibility of impairment to the defense.  *Id.*  The delay in this case caused neither actual prejudice to Mr. Fitzpatrick's case nor to the interests protected by the right to a speedy trial.

The first interest the speedy trial right protects is prevention of "oppressive pretrial incarceration."  *United States v. Frye*, 489 F.3d 201, 213 (5th Cir. 2007).  However,

> [a] lengthy pretrial incarceration does not inherently offend a defendant's liberty interests. *See, e.g., Gray v. King,* 724 F.2d 1199, 1204 (5th Cir.1984) (finding no oppressive pretrial incarceration where defendant received credit for pretrial incarceration to be applied his sentence).

*Id.*  As Mr. Fitzpatrick has not shown that his pretrial incarceration has lengthened his imprisonment – or otherwise shown that his incarceration was oppressive, he has failed to prove a violation of the first interest protected by the speedy trial right.

Certainly, heightened anxiety exists while a defendant awaits trial in a capital case.  *Id.*  In support of his prejudice claim, Mr. Fitzpatrick makes only the general claim that he suffered anxiety from pretrial incarceration.  While anxiety is part of any pretrial incarceration; the question is whether that anxiety was extreme enough to differ substantially from that concomitant with facing criminal charges.  *See Goodrum v. Quarterman*, 547 F.3d 249, 263 (5th Cir. 2008) (finding that petitioner failed

---

[12] The length of the delay in this case is less than half of the five-year delay that warrants a presumption of prejudice.  *See Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008).

to demonstrate that "the anxiety he felt was of such an extreme degree that it differed in any way from that which would naturally be expected to accompany a defendant's awareness of pending charges.") In this case, Mr. Fitzpatrick has made no showing that his anxiety was that extreme.

The most serious prejudice factor is the last (impairment of the defense) – "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Mr. Fitzpatrick has not shown that the delay in being brought to trial impaired his defense. Clearly, the record does not support his claim that he suffered prejudice from pretrial delay.

**5. Balancing the Factors**

Weighing the *Barker* factors does not support a finding that Mr. Fitzpatrick was deprived of his right to a speedy trial. The length of the delay was more than one year; as such, the court considered the other factors. The record does not reveal the reason for the delay; hence, this factor weighs slightly in Mr. Fitzpatrick's favor. He never asserted his right to a speedy trial; thus, this factor weighs in favor of the state, as he did not "alert the government of his grievances." *See Amos, supra*. Finally, Mr. Fitzpatrick has not shown that he suffered prejudice from the delay. He has not alleged that the anxiety he suffered differed substantially than that he would have suffered simply from knowing that he was a defendant in capital murder case. He similarly has not shown that the delay prejudiced his defense in any way.

As such, the Mississippi Supreme Court's rejection of his speedy trial claim on state post-conviction review was neither contrary to nor involved an unreasonable application of clearly established federal law. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented. Federal *habeas corpus* relief is not warranted based on his

allegation of a speedy trial violation.

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied.

A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 7th day of June, 2019.


**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**